UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WELDU WELDEYESUS,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, *et al*.,<br><br>Respondents. | Case No. C26-3116-SKV<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Weldu Weldeyesus is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody and various forms of injunctive relief. Dkt. 1. Respondents filed a timely return to the petition (Dkt. 5), together with supporting declarations from ICE Deportation Officer Andre Ouk (Dkt. 6), and their counsel Katherine Collins (Dkt. 7). Petitioner filed a traverse in reply (Dkt. 8), together with a declaration from one of his attorneys, Cassandra Ekure (Dkt. 9). The Court having reviewed the parties' submissions, and the governing law, GRANTS in part Petitioner's petition for writ of habeas corpus (Dkt. 1).

## I. BACKGROUND

Petitioner is a native and citizen of Ethiopia who came to the United States in 2001 on an F-1 student visa. Dkt. 1 at 5; Dkt. 6, ¶¶ 4-5. Petitioner's student visa was valid throughout his studies which apparently concluded in 2009. Dkt. 1 at 5. On or about February 19, 2010, an I-130 Petition for Alien Relative identifying Petitioner as the beneficiary was filed with U.S. Citizenship and Immigration Services ("USCIS"), and Petitioner also filed with USCIS a Form I-485 Application to Register Permanent Residence or Adjust Status. Dkt. 6, ¶ 6. Those applications were approved on or about June 11, 2010, and Petitioner was granted conditional Lawful Permanent Resident Status. *Id.* ¶ 7.

On or about June 1, 2012, Petitioner filed a Form I-751 Petition to Remove Conditions on Residence. *Id.* ¶ 8. Over five years later, on July 31, 2017, USCIS issued a Notice of Intent to Deny ("NOID") Petitioner's Form I-751 and he was given 30-days to respond. *Id.* ¶ 9. Petitioner's Form I-751 was denied by USCIS on or about November 1, 2017, and it was noted in the denial that there were "significant negative factors detailed in the NOID show[ing] a marriage that was entered into for the sole purpose of circumventing immigration law and not a marriage entered into in good faith." *Id.* ¶ 10.

On March 6, 2018, USCIS issued a Notice to Appear ("NTA") placing Petitioner in removal proceedings, and on August 22, 2018, an immigration judge ordered Petitioner removed to Ethiopia in absentia after he failed to appear for a hearing in immigration court. *Id.* ¶¶ 11-12. Petitioner avers that he was unaware of the hearing because his attorney at the time failed to inform him he had a court date, and he did not learn about the order of removal until several months later. Dkt. 1 at 5.

On December 3, 2025, ICE officers in Salem, Oregon, arrested Petitioner after determining that he had no legal authorization to remain in the United States. Dkt. 6, ¶ 13; Dkt. 7, Ex. A at 2-3. Following his arrest, Petitioner was transported to ICE's Portland Field Office for processing and was then transferred to NWIPC where he remains detained. *See* Dkt. 6, ¶ 14; Dkt. 7, Ex. A at 3-4.

On December 17, 2026, Petitioner was provided a travel document application for Ethiopia, but indicated he would not fill it out because his family was already in the process of requesting his passport renewal from the government of Ethiopia. Dkt. 6, ¶ 15. Petitioner, however, was left with the application and advised that he was required to cooperate with ICE to obtain a travel document. *Id.* On January 17, 2026, Petitioner was served a Form I-229a Warning for Failure to Depart, which he refused to sign, and was again advised of his obligation to assist ICE in obtaining a travel document to Ethiopia. *Id.* ¶ 16. On February 16, 2026, a travel document request was sent to ICE Headquarters Removal and International Operations ("HQRIO") for review and approval before being submitted to the Ethiopian Embassy. *Id.* ¶ 17.

On March 28, 2026, an HQRIO Detention and Deportation Officer informed the local field office that the Ethiopian Embassy would issue a travel document once it received a passport photo of Petitioner, which ICE thereafter provided. Dkt. 6, ¶ 19. On June 8, 2026, the Office of Enforcement and Removal Operations ("ERO") conducted a post-order review and recommended that Petitioner continue to be detained because he had a final order of removal and there was a significant likelihood of removal in the foreseeable future. Dkt. 7, Ex. D.

On June 26, 2026, a travel document was issued for Petitioner, but the Department of Homeland Security ("DHS") received only a photocopy of the document from the Ethiopian Embassy, not a physical copy. *Id.* ¶ 21. Officer Ouk avers that because ERO intends to remove

Petitioner via commercial airline, the field office arranging the flight must have a physical copy of the travel document in its possession of. *Id.* ¶ 22. He further avers that because no physical copy of the document was received, "HQRIO intends to request that the Ethiopian Embassy re-issue the physical [travel document]." *Id.* ¶ 23. Once the physical document is received by HQRIO, it is to be forwarded to NWIPC so a removal flight can be scheduled. *Id.* Officer Ouk avers it will take approximately one to two weeks for the local field office to book a commercial flight for Petitioner once it receives the travel document from HQRIO. *Id.* ¶ 24.

On August 26, 2026, a Notice of Imminent Removal was served on Petitioner which informed him that ICE was in possession of a travel document to effect his removal, and that removal was expected to occur during the month of August 2026. Dkt. 8 at 2; Dkt. 9, Ex. A. However, there is no indication in the record that ICE at that time had a viable travel document given its decision to remove Petitioner via commercial airline and the fact that ICE had only a photocopy of the travel document. It is also unclear whether HQRIO has yet requested that Petitioner's travel document be re-issued as Respondents represent only that HQRIO *intends* to do so. *See* Dkt. 5 at 5; Dkt 6, ¶ 23.

Petitioner initiated this action on September 1, 2026. *See* Dkt. 1. He asserts in his petition that his continued detention is in violation of *Zadvydas v. Davis*, 533, U.S. 678, 689 (2001). *See id.* at 3. He seeks release from custody and various forms of injunctive relief related to potential re-detention and removal to a third country. *Id.* Respondents argue in response that Petitioner's continued detention is lawful and not indefinite, and that Petitioner fails to demonstrate an entitlement to injunctive relief. *See* Dkt. 5 at 6-12.

//

//

## II. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

## III. DISCUSSION

### A. Indefinite Detention

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens such as Petitioner who have been ordered removed. Under § 1231(a), the Department of Homeland Security ("DHS") is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. 8 U.S.C. § 1231(a)(6). Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-day window, it cannot do so indefinitely. *See Zadvydas*, 533 U.S. at 682.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States. 533 U.S. at 701. The Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual. *Id*. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to

rebut that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

There is no dispute that Petitioner has been detained pursuant to a final order of removal since December 3, 2025, and that his detention has therefore exceeded the six-month period *Zadvydas* identifies as "presumptively reasonable." 533 U.S. at 701. However, the parties disagree as to whether Petitioner is likely to be removed in the reasonably foreseeable future.

Petitioner argues that his removal is not likely to occur in the reasonably foreseeable future because ICE has not obtained travel documents to Ethiopia despite his cooperation. Dkt. 1 at 22. Petitioner acknowledges he was informed by ICE in August 2026 that it had travel documents in its possession and that his removal was expected to occur within the month, but he notes that not only did his removal not occur as anticipated, he has never been provided proof that ICE actually possessed a travel document at all. Dkt. 1 at 6.[1] Respondents appear to confirm that they do not, at this juncture, have a valid travel document for Petitioner (Dkt. 6, ¶ 21, 22) and, as Petitioner points out, although Respondents have indicated only that ICE "intend[s] to request reissuance" of the travel document and is "awaiting receipt" of a viable document, they have provided no timeline for when they expect this to occur (Dkt. 8 at 4). Given that Respondents were unable to effect Petitioner's anticipated removal in August 2026 despite ICE's representation in its August 26, 2026 Notice of Imminent Removal that it had the documentation to do so, together with Respondents' acknowledgement that additional documentation is now required without any clear evidence that such documentation has actually been requested, the Court concludes that Petitioner has shown "good reason to believe that there

[1] Petitioner also notes that he has never been contacted by the Ethiopian consulate (Dkt. 1 at 6), but he fails to explain how this absence of communication relates to the question of whether or not he is likely to be removed in the reasonably foreseeable future.

is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

As Petitioner has met his initial burden, the burden now shifts to Respondents to rebut Petitioner's showing with evidence. Respondents maintain that "ICE has taken concrete steps to remove Petitioner," that Ethiopia has previously issued a travel document for Petitioner, and that ICE is simply awaiting receipt of a reissued physical travel document. Dkt. 5 at 6-7. However, Respondents have not provided a copy of the travel document they purportedly obtained in June 2026, nor have they put forth evidence demonstrating that ICE has actually requested a re-issued travel document. Also absent from the record is any explanation of the process involved in obtaining a re-issued travel document or an anticipated timeline for doing so. The record suggests that it took Respondents approximately four months to obtain a travel document in the first instance and, as noted above, that document was inadequate to effect Petitioner's removal. Respondents' assertion that there is only one more step to complete before Petitioner may be removed, *i.e.,* re-issuance of the travel document, in the absence of any details as to what they have done to accomplish this final step or how long they expect it to take, is insufficient to show that Petitioner's removal is likely in the reasonably foreseeable future. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

Based on the foregoing, the Court finds that Respondents have failed to rebut Petitioner's showing that his detention has become unlawfully indefinite. Petitioner is therefore entitled to habeas relief with respect to his indefinite detention claim.

### B. Third-Country Removal/Requests for Injunctive Relief

In addition to his request for release, Petitioner also seeks prospective relief related to any future re-detention. Dkt. 1 at 27-28. Specifically, Petitioner asks the Court to prohibit Respondents from re-detaining him without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence. *Id.* at 27. Petitioner seeks a related order prohibiting the government from re-detaining him unless it first obtains a valid travel document to Ethiopia, provides that travel document to both him and his lawyer, and provides him an opportunity to leave on his own but he does not leave. *Id.*

Petitioner also seeks injunctive relief related to possible removal to a third country. Dkt. 1 at 27. Specifically, Petitioner requests an order prohibiting Respondents from removing, or seeking to remove, him to a third country without first providing notice and a meaningful opportunity to respond in reopened removal proceedings. *Id.* In addition, he seeks an order prohibiting his removal to any third country on the grounds that Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects. *Id.*

Finally, Petitioner seeks an order prohibiting Respondents from subjecting him to GPS monitoring as a condition of his release, absent clear and convincing evidence that he is a flight risk or danger to the community, and no other alternatives mitigate those risks. Dkt. 1 at 28.

A party "seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2008). A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).

While Petitioner seeks to prohibit his future re-detention absent specific conditions having been met, he acknowledges that his current detention was not unlawful (Dkt. 1 at 8), and the factual record does not establish a specific, real, and immediate threat that he will be re-detained without adequate process after his release here. Accordingly, his request for a permanent injunction related to future re-detention is denied without prejudice.

With respect to Petitioner's concerns about third-country removal, while Petitioner challenges DHS's third-country removal practices generally, he does not demonstrate there is any real and immediate threat that he will be removed to a third country. Indeed, it appears Respondents efforts are solely directed at removing Petitioner to Ethiopia, which is the designated country on his removal order. Absent evidence of a realistic threat of third-country removal, which Petitioner has not presented, the Court denies Petitioner's request for an injunction limiting third-country removal. Nothing in this Order prevents Petitioner from seeking such relief in the future if necessary.

Finally, to the extent Petitioner requests an order precluding Respondents from subjecting him to GPS monitoring as a condition of release, this Court declines to insert itself into the administrative process of determining appropriate conditions of release.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with federal law and regulations. Respondents shall file a notice with the

Court within 48 hours that Petitioner has been released. Petitioner's requests for injunctive relief are DENIED without prejudice.

Dated this 8th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge